CINCINNATI INSURANCE COMPANY, APPELLEE, *v.* VOLKSWAGEN OF AMERICA, INC., APPELLANT.

240

(No. 86AP-776 — Decided
September 15, 1987.)

*McNamara & McNamara, John L.
Miller* and *Mark W. Bean,* for appellee.

*Schottenstein, Zox & Dunn, Rick
E. Marsh* and *Kris M. Dawley,* for appellant.

BRYANT, J. Defendant, Volkswagen of America, Inc., appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff, Cincinnati Insurance Company.

This products liability subrogation action arises out of an incident on October 7, 1981, when a 1976 Volkswagen Dasher station wagon owned by Timothy and Janet Dixon caught fire in their garage, causing damage to their home. The Dixons had an insurance policy issued by plaintiff. Plaintiff paid the Dixons their damages as a result of the fire and filed suit as subrogee against defendant. Defendant had distributed the 1976 Dasher to a dealer from whom the Dixons purchased it in 1976.

Plaintiff's complaint asserts that the 1976 Dasher owned by the Dixons was defectively designed and manufactured, which defects directly and proximately caused the damage to the Dixons' home. A trial was commenced on June 5, 1984 and, following the plaintiff's case, the trial court granted defendant's motion for a directed verdict. Plaintiff appealed. This court reversed the judgment of the trial court and remanded the matter for further proceedings. *Cincinnati Ins. Co.* v. *Volkswagen of America, Inc.* (1985), 29 Ohio App. 3d 58, 29 OBR 68, 502 N.E. 2d 651.

A second trial began on April 14, 1986 and revealed that on October 6, 1981, the day before the fire, Mrs. Dixon had driven to a friend's house. While there, her 1976 Dasher showed signs of overheating. After her friend's husband put water into the radiator, Mrs. Dixon allowed the car to cool, and then returned home about 2 p.m.

The next day, October 7, 1981, Mrs. Dixon took her son Jeremy to preschool about noon. She had her ten-month-old daughter with her. As she returned from preschool and within a couple of houses from her home, she smelled an unusual odor emanating from the car. She drove the car into the driveway and pulled it into her garage. Noticing smoke coming out of the inside of the car, she ran to the other side of the car and removed her daughter to the house. When she returned to the car, it was in flames. She unsuccessfully attempted to extinguish the fire with water. Significant portions of the Dixons' home were destroyed by fire.

During the course of the trial, plaintiff attempted to question one of its witnesses, Richard L. Harmer, from recall reports, plaintiff's Exhibits D and E, prepared by the National Highway Traffic Safety Administration ("NHTSA" reports). Initially, on plaintiff's first referring to the reports, defendant objected:

"Mr. Marsh: Excuse me, Your Honor, we have an objection. We have some question as to whether these documents are going to be admissible.

"The Court: Overruled. You may continue."

Without testifying as to the contents of the exhibits, the witness briefly described the reports generally. When plaintiff's counsel returned to his original line of questions regarding the NHTSA reports, defendant's counsel again objected and requested a bench conference. At that time he objected:

"Mr. Marsh: Let the record show that the defendant has objected to the introduction of plaintiff's Exhibits C, D and E for the reasons that these reports contain letters and complaints from various consumers, many of which do not relate to the model vehicle in question, and which do not relate to the type of incident involved in this case, which is a fire.

"Most of the complaints related to stalling of the vehicle, and certainly electrical failures including lights, horn, et cetera. And none of the incidents related in the complaints can be said to be identical to the instant situation. And there has been no record of any investigation confirming that what the consumer said is related to the fuel pump, or is related to what happened in this case."

The trial court did not rule on defendant's objection on the record. Thereafter, plaintiff's counsel extensively questioned several witnesses from the NHTSA reports.

At the conclusion of plaintiff's case, plaintiff offered Exhibits C, D and E into evidence. While defendant did not object to Exhibit C, it objected to the NHTSA reports:

"Mr. Marsh: We would object to Exhibits D and E from the federal government. We do not feel that they constitute the necessary exception to the hearsay rule.

"The Court: Overruled."

Following the conclusion of plaintiff's case, defendant sought to introduce the deposition of Margaret Thaxton to prove when Mrs. Dixon first saw smoke coming out of the car. The court refused to admit Mrs. Thaxton's deposition, as the testimony related to assumption of the risk, which the court found inapplicable.

At the conclusion of the trial, the jury returned a verdict in favor of plaintiff. Defendant appeals setting forth two assignments of error:

"1. The trial court erred in admitting into evidence investigative reports prepared by the National Highway Traffic and Safety Administration.

"2. The trial court erred in refusing to admit evidence concerning, and refusing to instruct the jury on, the defense of assumption of risk and comparative fault."

## I

## A

The NHTSA reports contain hearsay, Evid. R. 801, which is inadmissible unless otherwise provided by rule, statute or constitutional provision. Evid. R. 802. Initially, then, we must determine whether the NHTSA reports are properly admissible as an exception to the hearsay rule under Evid. R. 803(8), which states in pertinent part:

"Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

While the Ohio rule was based on Fed. Evid. R. 803(8), the federal version contains one provision clearly omitted from the Ohio rule: "* * * factual findings resulting from an investigation made pursuant to authority granted by law * * *." Fed. Evid. R. 803(8)(C).[1]

---

[1] In pointing to the deletion of the foregoing provision from the Ohio rule, the comments to the Ohio Rules of Evidence note that "subdivision[s] (A) and (B) were

As a result, unlike the federal rule which contemplates the admission under subdivision (C) of evaluative and investigative reports and matters of disputed evidence, see, *e.g., Baker* v. *Elcona Homes Corp.* (C.A. 6, 1978), 588 F. 2d 551, 556-559, and *Walker* v. *Fairchild Industries, Inc.* (D. Nev. 1982), 554 F. Supp. 650, 653, the Ohio rule is generally not perceived so broadly.

Professor Giannelli notes that "evaluative reports are not admissible under Ohio Rule 803(8)." Giannelli, Ohio Evidence Manual (1982), Article VIII, Section 803.12, at 42. Similarly, in interpreting Michigan Evid. R. 803(8),[2] the Michigan Supreme Court stated that "evaluative and investigative reports are not within the provision excepting from the hearsay rule 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report.' * * *" *Bradbury* v. *Ford Motor Co.* (1984), 419 Mich. 550, 553, 358 N.W. 2d 550, 552. See, also, *Wetherill* v. *Univ. of Chicago* (N.D. Ill. 1981), 518 F. Supp. 1387.

In addition to being evaluative, the NHTSA reports contain the statements of lay people. As Professor Weissenberger notes:

"* * * [N]either subdivision (a) nor (b) of Rule 803(8) embraces statements made by persons outside the official agency, *i.e.,* private citizens. Where sources outside the agency have made statements or contributed information, the issue is one of multiple hearsay * * *." (Footnote omitted.) 1 Weissenberger, Ohio Evidence, Section 803.108, Chapter 801, at 95.

Considering much of the forego-

ing, and in circumstances much like those presented herein, one Ohio court has held that:

"* * * [U]nder Ohio Evid. R. 803(8)(b), the portion or portions of public reports describing matters of which the reporter has first-hand knowledge are admissible. * * *

"* * * However, * * * hearsay statements which do not have an independent source of admissibility * * * are inadmissible under * * * Evid. R. * * * 803(8). * * *" *Freeman* v. *Beech Aircraft Corp.* (Sept. 30, 1983), Butler App. Nos. CA80-11-0119, CA80-11-0120, and CA80-11-0121, unreported, at 41-42.

We find the foregoing persuasive and likewise hold that for a document to be admissible under Ohio Evid. R. 803(8)(b), the observations of the reporter must occur pursuant to a legally imposed duty and the matters observed must be the subject of a duty to report. Moreover, the observations must be either the firsthand observations of the official making the report or of one with a duty to report to a public official. See *Freeman* v. *Beech Aircraft Corp., supra; Wetherill* v. *Univ. of Chicago, supra; Bradbury* v. *Ford Motor Co., supra; Westinghouse Electric Corp.* v. *Dolly Madison Leasing & Furniture Corp.* (1975), 42 Ohio St. 2d 122, 71 O.O. 2d 85, 326 N.E. 2d 651.

In applying the foregoing to the NHTSA reports in this case, we find significant portions of the reports contain hearsay statements which are not firsthand observations of the official making the reports, and further contain evaluative or investigative information from the NHTSA. Accordingly,

---

deemed adequate to cover admissibility of government reports contemplated by this exception." Precisely what that comment means, however, is less than clear. As a result, interpretation of Evid. R. 803(8) is

not as apparent as an initial review might indicate.

[2] Michigan Evid. R. 803(8) is essentially identical to Ohio's and omits subdivision (C) found in the federal version.

significant portions of the NHTSA reports are inadmissible under Ohio Evid. R. 803(8).

We therefore must determine whether defendant properly objected to plaintiff's use of the NHTSA reports and, if so, whether the admission of testimony from the NHTSA reports and the admission of the NHTSA reports themselves were prejudicial to defendant.

## B

At the conclusion of plaintiff's case, defendant objected to the admission of the NHTSA reports as hearsay:

"Mr. Marsh: We would object to Exhibits D & E from the federal government. We do not feel that they constitute the necessary exception to the hearsay rule.

"The Court: Overruled."

Pursuant to our interpretation of Evid. R. 803(8) above, portions of the NHTSA reports were inadmissible hearsay. Accordingly, the trial court should have sustained defendant's objection.

Whether the trial court's error in overruling defendant's objection was prejudicial is determined by other portions of the record. Substantial portions of the NHTSA reports were presented to the jury through the testimony of various witnesses. As such, much of the NHTSA reports was already before the jury in the testimony heard; admission of the documents merely duplicated to a large extent the testimony received during trial. As a result, if the testimony regarding the NHTSA reports properly was received, admission of the documents was not prejudicial error. By contrast, if the testimony was received improperly, then admission of the testimony as well as the documents was prejudicial error.

On plaintiff's first introducing the NHTSA reports through its witnesses, defendant's counsel objected:

"Mr. Marsh: Excuse me, Your Honor, we have an objection. We have some question as to whether these documents are going to be admissible.

"The Court: Overruled. You may continue."

While defendant's objection could have been more specific in delineating the grounds upon which the documents ultimately would be inadmissible, the trial court likewise might have clarified the record by inquiring as to the basis for defendant's objection. Instead, the trial court's summary dismissal of defendant's objection apparently foreclosed any explanation of defendant's objection. Even in the absence of the court's allowing an explanation, defendant properly should have followed the court's actions with a statement for the record regarding the basis of its objection. Nonetheless, we are reluctant to find that defendant has waived its objection under these circumstances which, at the least, alerted the trial court to a problem with the NHTSA reports, if not the specific problem raised thereby. Defendant's objection should have been sustained.

Subsequent to the foregoing exchange, the trial court allowed plaintiff to question its expert witnesses extensively from the NHTSA reports. Moreover, plaintiff's experts based their conclusions on the inadmissible NHTSA reports. Inasmuch as the documents themselves were inadmissible, the trial court improperly allowed plaintiff's witnesses to testify to information which ultimately would be inadmissible in documentary form and further improperly allowed defendant's experts to base their opinions on inadmissible documents. See Evid. R. 703. Given defendant's objection, the testimony taken from and based on the

NHTSA reports improperly was received to defendant's prejudice.

Despite the foregoing, plaintiff contends that the testimony derived from the documents and the admission of the documents themselves were not prejudicial. We disagree. The bulk of plaintiff's case was taken from the NHTSA reports, and the expert opinion plaintiff relied upon to prove a defect in defendant's product was based in large part, if not entirely, on the NHTSA reports. Indeed, even if portions of the documents were admissible, the inadmissible portions played such a significant role in plaintiff's case and its experts' opinions that we must view admission of the testimony and reports as prejudicial.

Accordingly, the trial court properly should have sustained defendant's objections to the admission of and testimony taken from the NHTSA reports. Failure to do so constitutes prejudicial error, and we therefore sustain defendant's first assignment of error.

## II

In its second assignment of error, defendant contends that the trial court erred in refusing to allow into evidence the deposition of Mrs. Thaxton and in refusing to instruct the jury on assumption of the risk and comparative fault.

Initially we note that Mrs. Thaxton's deposition and the issue of assumption of the risk first arose for the trial court's consideration at the beginning of defendant's case. At that time, plaintiff's counsel objected to Mrs. Thaxton's deposition because "it relates merely to an assumption of risk, and really not even an assumption of risk. It was just contributory negligence." The trial court agreed and indicated that if plaintiff had accurately stated defendant's purpose in seeking the admission of the deposition, it would disallow the deposition. Defendant's counsel gave no indication of any other purpose. Defendant also requested that the court instruct the jury on assumption of the risk and contributory negligence.

Comparative fault, including contributory negligence, is not a defense to products liability actions based upon strict liability in tort. *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 31 OBR 559, 511 N.E. 2d 373, paragraph one of the syllabus. Accordingly, the trial court did not err in refusing to give an instruction on comparative fault or contributory negligence.

The only remaining issue, then, is whether the trial court erred in excluding Mrs. Thaxton's deposition and in refusing to instruct the jury on the defense of assumption of the risk.

Assumption of the risk remains a viable defense in strict liability actions in Ohio. *Onderko* v. *Richmond Mfg. Co.* (1987), 31 Ohio St. 3d 296, 31 OBR 576, 511 N.E. 2d 388, syllabus. However, the evidence herein, including consideration of the deposition of Mrs. Thaxton, as a matter of law does not support an assumption-of-the-risk defense, and the trial court properly refused to instruct the jury on that issue. Accordingly, defendant's second assignment of error is overruled.

Inasmuch as we have sustained defendant's first assignment of error, this matter is remanded for further proceedings in accordance with this opinion. .

*Judgment reversed*
*and cause remanded.*

McCORMAC and YOUNG, JJ., concur.