POOL et al., Appellants,

v.

WADE, Appellee.

[Cite as *Pool v. Wade* (1996), 115 Ohio App.3d 449.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-95-315.

Decided Oct. 25, 1996.

*Alan L. Mollenkamp* and *John B. Fisher*, for appellants.

*Elizabeth E. Baer* and *Stephen A. Skiver*, for appellee.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, entered judgment on behalf of appellee, Ronald R. Wade, M.D., in this medical malpractice case. Appellants, June Pool et al., set forth the following three assignments of error:

"Assignment of Error No. 1.

"The trial court erred to the substantial prejudice of the plaintiffs in sustaining an objection to the use of a drug bulletin issued by the U.S. Food and Drug Administration ('FDA') in July 1974 and in not allowing testimony relative to actions taken by the FDA.

"Assignment of Error No. 2.

"The trial court erred to the substantial prejudice of the plaintiffs by consistently excluding proper expert testimony under Evidence Rule 703.

"Assignment of Error No. 3.

"The trial court's hostile demeanor toward the plaintiffs [*sic* ] case denied the plaintiffs a fair trial as guaranteed them under both the U.S. and Ohio State Constitution."

On July 29, 1994, appellant June Pool, individually and in her capacity as parent and next friend of Sean Pool, a minor, filed a complaint against appellee. Appellants alleged that appellee was negligent in not properly informing June Pool of the risk of taking anticonvulsant medications during pregnancy. Appellants further alleged that as a result of this negligence, Sean Pool was born with multiple abnormalities.

The case proceeded to trial in August 1995. The jury returned a verdict for appellee. This appeal followed.

In the first part of the first assignment of error, appellants contend that the trial court erred in sustaining an objection to the use of a U.S. Food and Drug Administration ("FDA") bulletin as an exhibit. In their brief, appellants admit that the FDA bulletin is hearsay, but argue that it was admissible under Evid.R.

803(8), the hearsay exception for public records and reports. Hearsay is defined in Evid.R. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Unless an exception applies under Evid.R. 803 or Evid.R. 804, hearsay statements are not admissible pursuant to Evid.R. 802, which provides:

"Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

Evid.R. 804 is inapplicable in this case. Evid.R. 803(8) provides an exception for the following:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

One authority has stated:

"The purpose of subdivision (a) is to admit those records involving the simplest and least controversial application of the doctrine, namely, those containing simple factual assertions regarding the function of the official agency. Examples of evidence admissible as proof of the activities of official agencies include: accounting records or [sic] governmental agencies; dockets and journal entries of courts, legislative bodies and administrative tribunals; certificates of title, registry, death and birth; records of licensing agencies; and records of deeds and conveyances. * * * [D]ue to the simple and factual nature of these records, and their focus upon the *internal* function of the relevant agency, the risk of inaccuracy is greatly diminished, and thus they qualify for admission under subdivision (a)." (Emphasis *sic;* footnote omitted.) Weissenberger's Ohio Evidence (1996) 409, Section 803.105.

A caveat to Subdivision (a) was noted:

"Where the focus of the particular record is more *external* to the functioning of the agency, in that it largely concerns the activities and conduct of certain citizens, or events or transactions outside the operation of the agency or office, it should not be admitted under subsection (a)." (Emphasis *sic;* footnotes omitted.) *Id.* at 409–410, Section 803.105.

In discussing Subdivision (b), this authority noted:

"In general, subdivision (b) is designed to embrace primarily factual records in a variety of forms, and Rule 803(8)(b) may be used as a vehicle for the admission of records reflecting events, transactions and conditions of almost any sort. Notably, the Rule does not include records, or portions of records, that may be characterized as 'evaluations' or 'interpretations' of such events or transactions." *Id.* at 411, Section 803.106.

■ An important foundational requirement for admission of official records pursuant to Evid.R. 803(8)(b) is that the governmental employee or agent have personal knowledge of the event or condition described in the report. *Id.* Although Subdivisions (a) and (b) mirror the corresponding federal Evidence Rule, Ohio did not adopt federal Subdivision (c), which deals specifically with investigative reports of governmental administrative agencies.

The court in *State v. Humphries* (1992), 79 Ohio App.3d 589, 597, 607 N.E.2d 921, 926–927, held that evaluative and investigative reports are not admissible as exceptions to the hearsay rule under Evid.R. 803(8)(b). See, also, *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.* (1987), 41 Ohio App.3d 239, 535 N.E.2d 702. Both courts noted that the public-records exception under the Ohio Rules of Evidence does not encompass evaluative or investigative reports. *State v. Humphries,* 79 Ohio App.3d at 597, 607 N.E.2d at 926–927; *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.,* 41 Ohio App.3d at 241–242, 535 N.E.2d at 704–706.

Additionally, in *Cincinnati Ins. Co.,* 41 Ohio App.3d at 242, 535 N.E.2d at 705– 706, the court noted that the reports included statements made by lay people as well as statements made by the official agency. The court excluded the reports because they contained hearsay statements that were not firsthand observations of the official making the reports. In reaching this conclusion, the court quoted the following from 1 Weissenberger, Ohio Evidence, Section 803.108, at 95:

"[N]either subdivision (a) nor (b) of Rule 803(8) embraces statements made by persons outside the official agency, i.e., private citizens. Where sources outside the agency have made statements or contributed information, the issue is one of multiple hearsay * * *." (Footnote omitted.)

The *Cincinnati Ins. Co.* court held that for a document to be admissible under Evid.R. 803(8)(b), the observations of the reporter must occur pursuant to a legally imposed duty, the matters observed must be the subject of a duty to report, and the observations must be the firsthand observations either of the official making the report or of one with a duty to report to a public official. *Id.* See, also, *State v. Vogelsong* (1992), 82 Ohio App.3d 354, 358–359, 612 N.E.2d 462, 465–466 (electronic file inadmissible under Evid.R. 803[8] when official had access to data but could not verify data's accuracy or method of input); *State v. Breeze*

(1993), 89 Ohio App.3d 464, 472, 624 N.E.2d 1092, 1097 ("Data created by a secondary [nonpublic agency] source and placed into a police file is not automatically converted into a public record for purposes of the hearsay exception in Evid.R. 803[8].").

*Wetherill v. Univ. of Chicago* (N.D.Ill.1981), 518 F.Supp. 1387, 1389, is useful in our analysis of Evid.R. 803(8). In *Wetherill,* the court examined the admissibility of a United States Department of Health, Education and Welfare ("HEW") report prepared by an *ad hoc* task force established to study the effects of the drug diethylstilbestrol ("DES"). The task force reviewed published and unpublished information on DES and made recommendations. The court, contrasting this report with an EEOC report held admissible in another case, noted:

"But here the Report was based in large part on the task force's evaluation of the results of the experiments as themselves interpreted by sophisticated scientists. Moreover the task force also relied on many informal sources of evidence that were not based on first-hand observation. There is obviously a greater degree of trustworthiness in a report prepared by a trained EEOC investigator from lay accounts of an incident than in a task force's assessment of work done by experts combined with its evaluation of material from a wide variety of other non-expert sources." *Id.*

The court also quoted the following from 4 Weinstein's Evidence 803(8)[02] at 803–198:

"When the statement was furnished by a layman without any duty to report, the requisite guarantees of reliability necessary for the official records exception to apply were missing, unless some other hearsay exceptions might be satisfied * * *." *Id.* at 1389–1390.

The court concluded that the report was inadmissible because it was based on evidence from numerous unofficial sources, "many of whom obviously had no 'duty imposed by law' to report such information." *Id.*

■ In applying the foregoing to the FDA bulletin in this case, this court finds that the bulletin contains hearsay statements which were not firsthand observations of the official making the report and further that the bulletin contains evaluative or investigative information from laypersons. Therefore, the FDA bulletin was not admissible under Evid.R. 803(8).

Accordingly, the first part of appellants' first assignment of error is found not well taken.

■ In the second part of the first assignment of error, appellants argue that the trial court erred in not allowing expert testimony relative to the actions taken by the FDA. At trial, however, appellants did not proffer the substance of what

their expert's testimony would have been. The following is the relevant portion of the trial transcript of the direct examination of appellants' expert:

"Q: Do you have an opinion, Doctor, as to when there first came to be a general consensus in the field of medicine and science—concerning the fact that hydantoins cause birth defects in pregnancy?

"[APPELLEE'S ATTORNEY]: Objection.

"THE COURT: I'll let him answer.

"A: Um—

"THE COURT: If there was such a consensus.

"A: Well, the—by 1974 the FDA—

"[APPELLEE'S ATTORNEY]: Objection as to what the FDA did.

"THE COURT: Sustained."

Evid.R. 103(A) provides:

"(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

" * * *

"(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination."

■ It is well settled that when a court has sustained an objection, a statement must be made as to what the expected answer would be in order that a reviewing court can determine whether the ruling is prejudicial. In the absence of a proffer, the exclusion of evidence may not be assigned as error, *State v. Gilmore* (1986), 28 Ohio St.3d 190, 191–192, 28 OBR 278, 279–280, 503 N.E.2d 147, 149–150, unless the substance of the excluded evidence is apparent from the context within which questions were asked. See, also, *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 337–338, 441 N.E.2d 845, 850–851. In the case *sub judice*, the substance of the excluded testimony is not apparent from appellants' attorney's question and the expert's brief utterance before the objection. Thus, an offer of proof was needed to preserve the record for appeal. *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 54, 12 OBR 190, 195–196, 465 N.E.2d 1326, 1333.

Accordingly, the second part of appellants' first assignment of error is found not well taken.

In the second assignment of error, appellants argue that the trial court erred in its rulings regarding the admissibility of expert testimony under Evid.R. 703. Appellants cite five rulings: four that occurred during direct examination of one of their experts [1] and a fifth ruling during appellants' closing argument. Resolution of this assignment of error requires review of Ohio law concerning hearsay and learned treatises.

Hearsay was previously defined in this opinion.

Hearsay testimony does not afford the opposing party an opportunity to confront and to cross-examine the out-of-court declarant, thereby depriving the party of the "guaranty of truthfulness resulting from the oath of [the] declarant." *Potter v. Baker* (1955), 162 Ohio St. 488, 494, 55 O.O. 389, 392, 124 N.E.2d 140, 144. Furthermore, the opportunity to test the accuracy of the declarant's observations is not present when hearsay statements are admitted into evidence. *Id.* Therefore, hearsay statements generally lack indicia of reliability and are not admissible pursuant to Evid.R. 802.

■ The Ohio Rules of Evidence do not incorporate the learned-treatise exception to the hearsay rule incorporated in Fed.R.Evid. 803(18). Thus, in Ohio, learned treatises may not be admitted into evidence, and a witness may not quote from the treatise or refer to its title during direct examination. *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 15 O.O.2d 126, 173 N.E.2d 355, syllabus. As stated by the Ohio Supreme Court in *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 838: "In Ohio, textbooks and other learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only." In regard to use of learned treatises for impeachment, the Ohio Supreme Court has also stated:

"Accordingly, in Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Moreover, the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature." (Citation omitted). *Stinson v. England* (1994), 69 Ohio St.3d 451, 458, 633 N.E.2d 532, 539.

Beyond the hearsay problem, learned treatises are inadmissible because the opinions or conclusions contained therein are unverifiable, the technical language may not be understood by most triers of fact, the opinions or conclusions would be admitted into evidence without an oath of truthfulness, and the opposing party would be unable to cross-examine the person who gave the opinion or conclusion.

---

1. In the first ruling cited, the objection occurred after the expert gave his response, and the trial court stated: "Well, he's answered. Let it go." Thus, the trial court did not sustain the defense objection.

*Piotrowski v. Corey Hosp.*, 172 Ohio St. at 69, 15 O.O.2d at 130, 173 N.E.2d at 360.

Evid.R. 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

■ Ohio Evid.R. 703 differs from the federal rule in that the Ohio rule does not recognize a third basis for expert opinion: information supplied to the expert outside the record, "if of a type reasonably relied upon by experts in the particular field." [2] Fed.R.Evid. 703. As one legal authority has noted:

"McCormick notes that under Federal Rule 703, the jury is asked to accept the expert witness's inference where it is based upon a hearsay assertion of fact which is, presumably, unsupported by any evidence at trial. The Ohio Rule embraces McCormick's criticism, and under Ohio Rule 703, the proponent of the expert must obtain the admission of the facts or data supporting the expert opinion before the opinion is properly rendered." (Footnotes omitted.) Weissenberger's Ohio Evidence (1996) 305, Section 703.3.

As the court in *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 676–677, 595 N.E.2d 360, 365, stated:

"[A] fine line must be drawn between an expert opinion which has incorporated the scholarly opinions of others, and the direct quotation of the opinions or conclusions of other experts, which is not permitted."

The court in *Beavercreek Local Schools v. Basic, Inc.*, 71 Ohio App.3d at 677, 595 N.E.2d at 365, quoting from *Steinfurth v. Armstrong World Industries* (1986), 27 Ohio Misc.2d 21, 23, 27 OBR 206, 208–209, 500 N.E.2d 409, 412, also noted:

"Even the mentioning of the titles of the articles would preclude the * * * [opposing party] from having the opportunity of adequate cross-examination as to the truth of the matters contained therein. It is apparent that the drafters of the Ohio Rules of Evidence intended to preserve inviolate a litigant's right to confrontation. They also were undoubtedly aware of how difficult it is for the average juror to grasp the fine distinction attorneys draw when admitting a piece of evidence when it is not offered for the truth contained therein, but merely for the purpose that a statement was made. As a result, direct quotation is not permitted under the Ohio Rules."

---

2. One of appellants' trial attorneys, admitted to the practice of law in New Jersey and admitted *pro hac vice* for this trial, argued this basis for the admissibility of the expert's opinion at trial.

458

Appellants cite *Hart v. Lechnar* (June 7, 1991), Lucas App. No. L–89–276, unreported, 1991 WL 97313, in support of their argument. The case, however, does not support appellants' argument. In *Hart*, this court stated:

"When Lechnar's expert testified, he acknowledged that he relied on the Crowe article to formulate his conclusions. In addition, a portion of the article was read into evidence. *Both the reference to the specific article and the reading of a portion of the article into evidence were improper under Ohio law.*" (Emphasis added.)

In this case, on direct examination, appellants' expert mentioned "medical literature" or "the literature" or was asked about it, and appellee objected. It is apparent that appellee anticipated that the expert would next, improperly under Ohio rules, refer to specific medical treatises or articles and that appellee did not want to be in the position of "unringing the bell" by objecting after a specific reference had been made. This court has thoroughly reviewed the record. Under the facts and circumstances of this case, this court does not find that the trial court erred in sustaining appellee's objections.

Accordingly, appellants' second assignment of error is found not well taken.

In the third assignment of error, appellants contend that the trial court's hostility toward their case denied them a fair trial as guaranteed under both the United States and Ohio Constitutions. Appellants cite several instances as examples of the trial court's hostility toward their case. This court, after a thorough review of the record, finds no merit in appellants' contention.

The first example cited by appellants occurred during voir dire when a potential juror stated that one of her children had been born with clubfeet. The court questioned her about sympathy and objectivity in this case and then asked:

"THE COURT: * * * Do you know of any reason that your son was born with that defect?

"[POTENTIAL JUROR]: No.

"THE COURT: Those things happen. I had a son that was born with a severe physical defect which has, of course, affected him through the years. Those things—mother nature sometimes fumbles the ball for no known reason. I can sympathize with you. But the only thing is, in the trial of this case, you must not let that affect your verdict if you are seated as a juror.

"[POTENTIAL JUROR]: I understand.

"THE COURT: Anybody else have any physical defect in either their own family or a member of their immediate family or close friends that in any way would affect your sitting as a juror?"

Appellants assert that this exchange "planted seeds of doubt as to the Plaintiffs [*sic* ] theory into the minds of the jury." Appellants also assert that trial counsel expressed concern about the interaction noted above in an unrecorded sidebar shortly after the interaction. However, as noted, that sidebar was not recorded.

At issue in this case were birth defects and their causation. Thus, the trial court questioned potential jurors regarding birth defects. The trial court's comment, taken in context, was in response to the potential juror's answer that she did not know the cause of her son's defect. The trial court's comment constituted an acknowledgment of common knowledge: birth defect causation is not always known.

We find no prejudice in this comment by the trial court. Furthermore, any potential prejudice to appellants was offset by the trial court's jury instruction which cautioned the jurors against being influenced by any impression they had of what the trial judge thought.

■ In regard to other examples cited by appellants as prejudicial, [3] this court has thoroughly reviewed appellants' specific allegations as well as the entire trial transcript and does not find that appellants were denied their right to a fair trial.

Evid.R. 611(A) [4] recognizes the trial court's authority to exercise control over the courtroom. The trial court exercised such authority when one of appellants' experts prefaced his answer about the components of fetal hydantoin syndrome with the comment "It's a long list." The trial court then stated: "Why don't we confine it to the components claimed in this case," and appellants' trial counsel responded, "Fine." In another cited example, when appellants' counsel began questioning another expert about his responsibilities in the family court in New York, after this expert had already described his responsibilities, the trial court stated:

"THE COURT: Let's move on and get to the issues at hand. I'm not interested, and I'm sure the jury isn't interested, in the family court of New York. Let's move on."

Other examples include the trial court's request that another expert not "ramble" but answer the question asked; the trial court's request that this same expert answer another question; and in a third example, when another expert, in

---

3. One cited example occurred during a sidebar conference and, thus, as admitted by appellants, presumably outside the hearing of the jury. We need not address this example.

4. Evid.R. 611(A) reads:

 "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

response to a query about his testimony in prior cases, began an explanation of why he testifies in litigation, the trial court stated, "I take it your answer to the question would have been yes?"

Some of the above examples involved testimony that was not relevant and some testimony that was redundant. This court finds no prejudice in the trial court's prodding of the witnesses and trial counsel to move the case along. See *Guziak v. Guziak* (1992), 80 Ohio App.3d 805, 817, 610 N.E.2d 1135, 1143.

Appellants also cite examples of the trial court's comments to trial counsel, including the following exchange:

"[APPELLEE'S COUNSEL]: Objection. Leading, Your Honor.

"THE COURT: It is. Go ahead, though. It is leading. You lead quite often. So * * *."

Other examples were when the trial court cautioned appellants' trial counsel not to repeat testimony when he either prefaced his questions with prior testimony or repeated questions already asked and answered. Another example concerned the trial court's response when appellants' trial counsel challenged the judge's ruling regarding appellants' trial counsel's cross-examination of appellee.

After a through review of the entire trial transcript, this court finds that the trial court exercised its authority pursuant to Evid.R. 611(A). In *Nabakowski v. 5400 Corp.* (1986), 29 Ohio App.3d 82, 90, 29 OBR 92, 100–101, 503 N.E.2d 218, 226–227, when the trial court interjected itself perhaps more often than necessary, the appellate court noted that the trial court "should have talked to counsel privately in a side-bar conference" but concluded, "These acts do not demonstrate bias but are likely to occur when counsel has limited trial experience, or tempers flare." See, also, *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 846, 649 N.E.2d 1247, 1251–1252.

This court concludes that many of the trial court's comments constituted efforts to keep the trial within reasonable bounds and/or were induced by behavior of counsel. Using the criteria in *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365–366, 373 N.E.2d 1244, 1248–1249,[5] vacated on other grounds, (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157, to determine whether the trial judge's comments were prejudicial, we conclude that, within the context of

---

5. The Supreme Court of Ohio set forth this five-part test:

"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365, 373 N.E.2d 1244, 1248.

the proceedings, the trial judge's comments represented the proper exercise of his authority to maintain order in the courtroom and/or to monitor the presentation of evidence in accordance with Evid.R. 611.

Furthermore, although we find no prejudice, any potential prejudice to appellants was offset by the trial court's jury instruction which cautioned the jurors against being influenced by any impression they had of what the trial judge thought. This court finds without merit appellants' argument that the trial court's demeanor was prejudicial and denied them a fair trial.

Accordingly, appellants' third assignment of error is found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., HANDWORK and SHERCK, JJ., concur.