[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant, Craig L. Settles ("appellant"), appeals the jury verdict finding him guilty of one count of murder, in violation of R.C. 2903.02. For the following reasons, we affirm appellant's conviction.
Appellant, fourteen years-old at the time, was charged with the aggravated murder of Charles D. Green, Jr. Appellee ("State") filed a motion pursuant to R.C. 2151.26 to transfer appellant's case to the Seneca County Court of Common Pleas, General Division, for prosecution as an adult. On April 4, 1997, the juvenile court found probable cause to believe that appellant committed the offense charged and ordered the matter continued for investigation. Pursuant to R.C. 2151.26, the juvenile court also ordered a psychological examination of appellant.
On April 14, 1997, an amenability hearing was held to determine whether to transfer jurisdiction of appellant to the Seneca County Court of Common Pleas for criminal prosecution. At the conclusion of the hearing, the juvenile court found that appellant would not be amenable to treatment or rehabilitation processes available to the court. Further, the court found that the safety of the community required that appellant be placed under legal restraint for a period extending beyond his legal majority. The court relinquished jurisdiction of appellant and transferred him to the Seneca County Court of Common Pleas for criminal prosecution.
The following evidence was adduced at trial. Shortly after midnight on March 5, 1997, Charles D. Green, Jr. was sitting in the driver's seat of his van at the Eco Village Townhouses, located in Fostoria, Ohio. Green was speaking with a friend, Brian Ferguson, who was standing next to the driver's side door of the van. Ferguson testified at trial that a car pulled alongside the van and appellant exited the backseat of the car. According to Ferguson, appellant opened the driver's-side door of the van and shot Green twice. Thereafter, appellant proceeded to the front of the van and shot at Green three times through the windshield. Another witness, Krista Scherger, also testified at trial that appellant fired several shots into the van.
Fostoria police received numerous 911 calls of the shooting and arrived at the scene within minutes. Thereafter, Green was rushed to Fostoria Community Hospital where he was treated for two gunshot wounds. One bullet entered and exited Green's back, while the second bullet entered Green's shoulder and traveled through his lung, ultimately severing his aorta. Shortly after arriving at the hospital, Green was pronounced dead. Appellant was later charged with the aggravated murder of Green.
A jury found appellant guilty of the lessor included offense of murder. Thereafter, the court sentenced appellant to fifteen years to life imprisonment. The trial court also imposed an additional three-year term for appellant's use of a firearm. Appellant now appeals, setting forth four assignments of error.
 Assignment of Error No. 1 Juvenile court erred in relinquishing jurisdiction of fourteen year-old mentally retarded child to the criminal division of the common pleas court, denying child [sic] right to fair trial and due process of law as guaranteed under Article I, Sections 5, 10 and 16 of the Ohio Constitution, and the Fifth, Sixth and Fourteenth Amendments to the Federal Constitution.
In deciding whether to relinquish its jurisdiction, the juvenile court enjoys a wide latitude of discretion. State v.Carmichael (1973), 35 Ohio St.2d 1, paragraphs one and two of the syllabus, cert. denied (1974), 414 U.S. 1161. Therefore, absent an abuse of discretion, we will not reverse a decision by the juvenile court to transfer a juvenile to the court of common pleas for prosecution as an adult. Carmichael, supra; see, also, Statev. Douglas (1985), 20 Ohio St.3d 34, 36.
A juvenile court's authority to transfer cases to a court of common pleas is governed by R.C. 2151.26 and Juv.R. 30. R.C.2151.26 provides in pertinent part that:
 (C)(1) * * * [A]fter a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after considering the factors specified in division (C)(2) of this section and after making all of the following determinations:
 (a) The child was fourteen years of age or older at the time of the act charged.
 (b) There is probable cause to believe that the child committed act charged.
 (c) After an investigation, including a mental examination of the child made by a public or private agency or a person qualified to make the examination, and after consideration of all relevant information and factors, * * * that there are reasonable grounds to believe that both of the following criteria are satisfied:
 (i) The child is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.
 (ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority.
 Appellant initially asserts that the mental examination required by R.C. 2151.26 was insufficient and, therefore, transfer of the cause to the Seneca County Court of Common Pleas was improper. We find that appellant's contention is without merit.
At the amenability hearing held on April 14, 1997, Dr. Patrick Harris, a psychologist, testified that he performed a full clinical interview of appellant. Dr. Harris' examination of appellant also included a personality inventory test as well as an intelligence test. Appellant's full-scale intelligence score indicated that he was on the low end of a borderline in measuring for mental retardation.[1] However, Dr. Harris also testified that he possessed insufficient information to determine whether appellant was in fact mildly mentally retarded.
Dr. Harris also testified that appellant was fairly normal in most areas for his age, and that appellant possessed a logical and coherent thought process. Dr. Harris testified that appellant's speech was normal and that appellant showed no signs of aberrant behavior. Further, there was no indication that appellant suffered from mental illness, nor was there any evidence that appellant suffered from a psychiatric disorder.
In deciding the matter before us, we must emphasize that the test is not whether we would have reached the same result based upon the evidence in the record but, rather, whether the juvenile court abused its discretion. State v. Hopfer (1996), 112 Ohio App.3d 521,535. We find that the juvenile court had sufficient psychiatric information to render a decision on whether to transfer jurisdiction of appellant to the Seneca County Court of Common Pleas. Therefore, the juvenile court did not abuse its discretion in failing to order a further mental examination of appellant.
Appellant further maintains that the juvenile court erred in failing to sufficiently determine appellant's competency for adjudication in juvenile court or for trial in the court of common pleas. We are unable to find any evidence in the record that appellant raised the issue of competency, either at the juvenile stage or the adult stage of the proceedings. Nevertheless, we will address appellant's argument.
It is well established that the criminal trial of an incompetent defendant violates due process. Medina v. California
(1992), 505 U.S. 437. A state may presume competence and place the burden on the defendant to prove his incompetence by a preponderance of the evidence without violating due process.Medina, supra.
Pursuant to R.C. 2945.37(G), in a court of common pleas, there is a presumption that a defendant is competent to stand trial and that the defendant has the burden of overcoming this presumption by a preponderance of evidence. At the present, Ohio does not have a competency statute in place for juveniles. Therefore, several appellate courts in Ohio have adopted the adult competency standard outlined in R.C. 2945.37 provided, however, that juveniles are assessed by juvenile, not adult norms. See Inthe Matter of: Robert Lloyd (Jan. 7, 1997), Richland App. No. 96CA 86, unreported; In Re: Paula McWhorter (Dec. 5, 1994), Butler App. No. CA94-02-047, unreported; In Re: Michael RogerJohnson (Oct. 25, 1983), Mont. App. No. 7998, unreported. We agree that the adult competency standard of R.C. 2945.37 should apply equally to juveniles provided, of course, that juveniles are assessed by juvenile rather than adult norms.
Although Dr. Harris testified that appellant's full-scale intelligence score placed him on the low end of a borderline in measuring for mental retardation, he also testified that there was insufficient information to determine whether appellant was mildly mentally retarded. Further, the United States Supreme Court has held that mental retardation does not necessarily preclude competency or relinquishment of jurisdiction. See Penry v.Lynaugh (1989), 492 U.S. 302. Upon a review of the record, we cannot say that appellant has shown, by a preponderance of the evidence, that he was incompetent to stand trial. Therefore, appellant's contention is without merit.
Finally, appellant contends that during the amenability hearing the juvenile court erred in allowing Fostoria Police Detective Steven Brown to testify as to his own personal belief that appellant was not amenable to care or rehabilitation within the juvenile system. A review of the transcript, however, reveals that appellant failed to object to the State's line of questioning. Appellant's failure to object waives the right to appeal the issue. Therefore, we may not reverse absent plain error. Crim.R. 52(B); State v. Long (1978), 53 Ohio St.2d 91, 97. In order to find plain error, the court must be able to conclude that but for the admission of the improper evidence, the outcome of the trial would clearly have been different. Long, supra, at 97.
The juvenile court's judgment entry states in pertinent part that:
 Based upon the seriousness of the present charge and the prior history of assaults and failure to improve after probation, the Court finds that Craig Settles is not amenable to further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.
* * *
The Court has also considered * * * his prior juvenile records, especially the assaults, felonious assault and a probation violation; the efforts previously made to rehabilitate Craig Settles through probation and the Youth Center; the child's family environment including their apparent inability to have him in after curfew, to keep him from daily marijuana use and to have him in school regularly and return papers for school testing; and the school records, including suspensions, expulsion, missed days and assault on a teacher and a threat to a teacher. The Court has also given serious consideration to the specific facts relating to this offense.
Pursuant to the juvenile court's judgment entry, there was sufficient evidence for the juvenile court to find that appellant was not amenable to care or rehabilitation within the juvenile system. Further, there is no evidence before us which suggests that the juvenile court improperly considered the opinion testimony of Detective Brown in deciding whether appellant was amenable to care or rehabilitation within the juvenile system. Therefore, we cannot in good conscience say that the admission of Detective Brown's testimony constitutes plain error.
For these reasons, appellant's first assignment of error is overruled.
 Assignment of Error No. 2
Trial court erred in admitting numerous hearsay staements [sic] contained in police reports in violation of Evid.R. 803(8), denying appellant the right to fair trial and due process of law as guaranteed under Article I, sections 5, 10 and16 of the Ohio Constitution and the Fifth, Sixth, andFourteenth Amendments to the Federal Constitution.
Appellant asserts that the trial court erred in allowing into evidence numerous hearsay statements in violation of Evid.R. 803(8)(b).
In the case at bar, appellant cross-examined Detective Brown as to the contents of his police report. The report contained numerous statements made to him by witnesses at the crime scene. The State objected to appellant's line of questioning on hearsay grounds but, nevertheless, the trial court allowed appellant to proceed with his questioning. Thereafter, the State questioned Detective Brown as to the contents of his police report. Appellant now asserts that the trial court erred in allowing into evidence the testimony elicited by the State on redirect examination.
Hearsay is an out-of-court statment offered to prove the truth of the matter asserted. Evid.R. 801(C). Although hearsay is generally not admissible, there are numerous exceptions to the general rule. See, e.g., Evid.R. 803. Evid.R. 803(8)(b) provides in pertinent part:
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * * (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness. (citation omitted.)
 Pursuant to Evid.R. 803(8)(b), there is a restriction upon the use in criminal cases of records or reports from "police officers and other law enforcement personnel" containing matters observed pursuant to official duty. See, also, State v. Emch (1982), 7 Ohio App.3d 7. Evid.R. 803(8)(b) expressly precludes the introduction of such evidence by the State, while permitting the accused to introduce it where favorable to him.
Pursuant to Evid.R. 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Therefore, Evid.R. 805 permits the use of "double" or "multiple" hearsay provided that each part of the hearsay chain conforms with an exception to the hearsay rule. Gianelli Snyder, Rules of Evidence Handbook (1998) 291.
Generally, multiple hearsay problems most frequently arise in connection with public records and business records. Gianelli 
Snyder, supra. A police report generally constitutes a public record for purposes of Evid.R. 803(8). Petti v. Perna (1993),86 Ohio App.3d 508, 513. However, the statements made therein must be either the firsthand observations of the official making the report or those of one with a duty to report to a public official.Petti, supra; see, also, Cincinnati Ins. Co. v. Volkswagen ofAmerica, Inc. (1987), 41 Ohio App.3d 239, 242. Therefore, all persons furnishing and recording information must be under an official duty to do so. 2 Gianelli Snyder, Evidence (1996) 148, § 803.38. Where the supplier of information is not under such a duty to do so, an essential link in Evid.R. 803(8)(b) is broken.supra; see, also, Sanders v. Hairston (1988), 51 Ohio App.3d 63
(report may well have contained inadmissible hearsay in which partner recounts statements from others which did not represent his own observation).
In the case at bar, Detective Brown was under an official duty to investigate and produce a report of the incident that took place on March 5, 1997. Therefore, pursuant to Evid.R. 803(8)(b), the police report, standing alone, falls within the business record exception to the hearsay rule and is admissible into evidence only by the accused.
The police report, however, contains the statements ofwitnesses at the scene of the murder and, therefore, are not Detective Brown's firsthand observations. These witnesses were under no official duty to give statements to the police. The absence of such an official duty breaks the so-called link in Evid.R. 803(8)(b). Further, the statements were offered for the truth of the matter asserted. For these reasons, the statements within the report are hearsay and the trial court erred in allowing the parties to offer them into evidence.
Although the statements contained within the police report are inadmissible hearsay, we find that the rule of invited error governs this assignment of error. "The rule of `invited error,' a corollary of the principle of equitable estoppel, prohibits a party who induces error in the trial court from taking advantage of such error on appeal." State v. Woodruff (1983), 10 Ohio App.3d 326,327.
Invited error would preclude a defense counsel who induces hearsay evidence on cross-examination from precluding further hearsay testimony on redirect examination. See State v. Miller
(1988), 56 Ohio App.3d 130. Therefore, any error with respect to Detective Brown's testimony, including any hearsay elicited by the State on redirect examination in response to appellant's cross-examination, was invited by the appellant. It is a general rule of law that a party who invites an error may not demand from the appellate court comfort from its consequences. SeeState v. Chappell (1994), 97 Ohio App.3d 515, 537.
Accordingly, appellant's second assignment of error is overruled.
 Assignment of Error No. 3
Trial court erred in admitting gruesome, repitative [sic], and materially prejudicial photographs denying appellant a fair trial and due process of law guaranteed under Article I, sections 5, 10, and 16 of the Ohio Constitution and theFifth, Sixth, and Fourteenth Amendments to the Federal Constitution.
Appellant contends that the trial court erred in admitting into evidence numerous photographs of the victim, Charles Green, taken while he was in the emergency room of Fostoria Community Hospital. Specifically, appellant contends that Exhibits 75-91 are repetitive, gruesome, and lack probative value.
It is well established that the admission of photographic evidence is left to the trial court's sound discretion. State v.Slagle (1992), 65 Ohio St.3d 597, 601; see, also, State v. Awkal
(1996), 76 Ohio St.3d 324. Properly authenticated, nonrepetitive photographs, even if gruesome, are admissible in capital cases as long as the probative value of each photograph outweighs the danger of material prejudice to the accused. State v. Maurer
(1984), 15 Ohio St.3d 239, 266. The Court in Maurer also indicated that the trial court has broad discretion in the admission of evidence and it would not interfere unless the trial court clearly abused its discretion and the defendant was materially prejudiced thereby. Maurer, supra, at 265.
In the case sub judice, we cannot say that the trial court abused its discretion in admitting Exhibits 75-91 into evidence. A review of the photographs leads us to the conclusion that they are not particularly gruesome or shocking. Further, although the photographs were not referred to by the coroner or the emergency room physician during their testimony, they were nevertheless helpful in determining the location of the wounds on Green, the various angles of penetration, and the condition of Green's body shortly after removal from the scene. Moreover, the photographs are probative evidence of appellant's purpose to cause death.
We also cannot say that Exhibits 75-91 are so cumulative or repetitive as to materially prejudice appellant. On balance, we find that the probative value of the photographs far outweigh the danger of material prejudice to appellant. In conclusion, we find no abuse of discretion in the trial court's decision to admit these photographs into evidence.
Accordingly, appellant's third assignment of error is overruled.
 Assignment of Error No. 4
State committed prosecutorial misconduct in offering irrelevant and prejudicial evidence denying appellant due process of law guaurnteed [sic] under Sections 5, 10, and 16, Article I, of the Ohio Constitution and the Fifth, Sixth andFourteenth Amendments to the United States Constitution.
Appellant contends that his conviction must be reversed due to various instances of alleged prosecutorial misconduct.
"[T]he touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 210; see, also, State v. DePew, 38 Ohio St.3d 275, 284. Further, the Supreme Court of Ohio stated that prosecutorial misconduct is not reversible error unless it deprives the defendant of a fair trial. Maurer, supra, at 266. Absent an abuse of discretion, an appellate court will not reverse a trial court's determination of whether a prosecutor has gone beyond the bounds permitted. Pang v. Minch (1990), 53 Ohio St.3d 186, 194.
Appellant initially contends that the State committed prosecutorial misconduct by pursuing a line of questioning intended to link appellant with gang activity. On several occasions during the trial, the State inquired into the purported gang activities of appellant, as well as several other witnesses. The trial court sustained appellant's objections and instructed the jury to disregard the State's statements relating to the gang involvement. A jury is presumed to follow the instructions given to it by the trial judge. State v. Loza (1994), 71 Ohio St.3d 61,75. Therefore, the prejudicial effects of any improper remarks by the State were greatly minimized through the trial court's curative instructions.
Appellant further maintains that the State "crossed over the line" during direct examination of witness Tyrone Settles by inquiring into his past and present economic status. A review of the transcript, however, reveals that appellant failed to object to the State's line of questioning. Appellant's failure to object waives the right to appeal the issue. Therefore, we may not reverse absent plain error. Crim.R. 52(B); Long, supra, at 97. In order to find plain error, the court must be able to conclude that but for the admission of the improper evidence, the outcome of the trial would clearly have been different. Long, supra, at 97. We cannot say that the State's inquiry into the past and present economic status of a witness constitutes plain error. Therefore, appellant's argument is without merit.
Finally, appellant contends that the State committed prosecutorial misconduct by asking Detective Brown to testify as to the veracity of several witnesses. The Supreme Court of Ohio has held that "`[i]n our system of justice it is the factfinder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.'" State v.Boston (1989), 46 Ohio St.3d 108, 129, quoting State v. Eastham
(1988), 39 Ohio St.3d 307, 312.
We find, however, that appellant had previously "opened the door" to this type of inquiry during his cross-examination of Detective Brown.[2] The concept of "opening the door" is based upon a theory that a party is not entitled to take advantage of an error which he or she invited or induces. State v. Barnett
(1990), 67 Ohio App.3d 760, 769; State v. Woodruff (1983),10 Ohio App.3d 326, 327. Further, a review of the transcript reveals that appellant did not object at trial to the State's inquiry into the veracity of the witnesses and therefore, absent plain error, waived the right to appeal the issue. See Crim.R. 52(B); Long,supra, at 97. We do not feel that the State's conduct constitutes plain error. Therefore, appellant's final contention is without merit.
In conclusion, we believe that appellant received a fair trial in every aspect of his trial and find that appellant's assertions of prosecutorial misconduct are without merit.
Accordingly, appellant's fourth assignment of error is overruled.
Judgment Affirmed.
 SHAW, P.J., and EVANS, J., concur.
[1] Dr. Harris testified that appellant received a verbal intelligence quotient ("IQ") score of seventy, a performance IQ score of seventy-two, and a full-scale IQ of 69. Dr. Harris testified that IQ's ranging from seventy to seventy-nine are borderline mentally retarded, while IQ's ranging from sixty to sixty-nine are mildly mentally retarded.
[2] The proceedings from October 23, 1997, reveal the following:
Appellant: "Do you believe Denver Brown?"
Witness: "I believe part of what she's saying."
Appellant: "Do you believe Krista Scherger?"
Witness: "Yes."
Appellant: "Part of it or all of it?"
 Witness: "I believe Krista is telling essentially the truth."