DECISION AND JOURNAL ENTRY
Defendant James Heim has appealed from a jury verdict and order of the Summit County Court of Common Pleas denying his motion for a new trial on the punitive and compensatory damages awarded to Plaintiffs Mary and Sarah Roe. Plaintiffs Mark, Mary and Sarah Roe have cross appealed from the trial court's order granting a new trial on the compensatory damages awarded to Mr. Roe. This Court affirms in part and reverses in part.
 I.
In March 1991, after the divorce of her parents Mark and Mary Roe, Sarah Roe, age 6, along with her older sister and mother, moved to a condominium development in Copley, Ohio. One of their new neighbors was Defendant James Heim. Defendant's son, Nevin, befriended the Roe girls, and for several years Sarah and her older sister played at Defendant's condo.
As early as 1992, Sarah began to show signs of depression. Mrs. Roe took Sarah to the Akron Child Guidance Center for counseling. It was during this same period that a visitation dispute arose between Mr. and Mrs. Roe. Since the time of their divorce, Mrs. Roe claimed her former husband had psychological problems. The legal dispute over visitation, however, began when Mrs. Roe complained to the domestic relations court of the sleeping arrangements while their daughters visited with Mr. Roe. It appears that the girls would wake up at night and ask their father to either sleep on the floor in their room or crawl into bed with them. As a result of her complaints, the domestic relations court ordered supervised visitation for the girls and their father. After visiting the facility where the supervised visitation was to take place and observing its protocol, the family decided that in person visitation would be foregone and that the girls would visit with their father over the phone. In August 1994, Sarah's counselors determined that her problems had only been aggravated by her parents' divorce and the visitation dispute. Although her symptoms of depression lingered, the visitation dispute ended and regular visitation promptly resumed.
Several months later, on a mid-November evening, Sarah entered her mother's bedroom and asked to speak with her. Sarah then, for the first time, described to Mrs. Roe the game of "Capture" which Sarah, her sister, Nevin and Defendant played at Defendant's condo. In Capture, Defendant was the "big monster" and would chase the children around the home. When he would catch one of the children, he would take him or her to his room, i.e.
the Dungeon. Sarah told her mother that when Defendant would capture her, he would take her to his room, lay her on the bed, push her legs apart and lay on top of her with "his private parts" touching hers. After a few seconds, he would get up and go catch one of the other two children. Sarah informed Mrs. Roe that this had happened about ten times since they had moved to the condominium complex in 1991.
Sarah also told her mother that on about five occasions while she sat on Defendant's lap, she could feel his hand slightly touching her genitals. At that time, Mrs. Roe terminated her daughters' contact with the Defendant and entered Sarah in counseling once more.
On January 27, 1997, Plaintiffs filed this action in the Summit County Court of Common Pleas alleging that Defendant had engaged in offensive and sexual touching of Sarah Roe over a period of several years. The complaint further alleged that, after Defendant was asked to refrain from contact with the children, he knowingly or negligently engaged in a pattern of conduct which caused further serious mental distress to Sarah and her family. They sought compensatory damages on behalf of Sarah and her parents. They sought punitive damages on behalf of Sarah.
After a jury trial, on December 10, 1998, a verdict was returned in favor of Plaintiffs awarding Mr. Roe $15,000 in compensatory damages, Mrs. Roe $20,000 in compensatory damages and Sarah $50,000 in compensatory and $100,000 in punitive damages. Defendant subsequently moved for a new trial claiming misconduct by the prevailing party, excessive damages and that the judgment was against the manifest weight of the evidence. The trial court granted Defendant's motion for a new trial as to Mr. Roe's claim for loss of filial consortium, but denied it as for the remaining claims. Defendant has appealed the judgment and has asserted four assignments of error. Plaintiffs have cross appealed from the trial court's order granting a new trial on Mr. Roe's claim.
 II. A. Defendant's Appeal
In his first assignment of error, Defendant has claimed that the judgment of the trial court was against the manifest weight of the evidence and a product of passion and prejudice. Indeed, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, it must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. General Tire,Inc. v. Mehlfeldt (June 23, 1999), Summit App. No. 19269, unreported, at 5-6.
Defendant has argued that this matter should be remanded to the trial court for a new trial because the manifest weight of the evidence does not support two elements of the Roe's claims, namely causation and damages. Defendant has argued that the evidence shows that Sarah's psychological problems and resulting damages were due to the divorce and Mrs. Roe's subsequent actions. He advanced a theory that Sarah suffered from depression and other psychological disorders as a result of Mr. and Mrs. Roes' divorce and the bitter visitation dispute during 1993 and 1994.
At trial, Defendant questioned Sarah, her older sister, Mrs. Roe and Mr. Roe regarding the domestic relations court order requiring supervised visitation during that time period. Each of these four witnesses testified that the children and Mr. Roe's relationship suffered as a result of this order. Further, Defendant brought out that this supervised visitation was a direct result of Mrs. Roe's complaints to the domestic relations court regarding the sleeping arrangements while the girls visited their father. The two girls and Mrs. Roe also confirmed that Sarah and her sister had, at least on one occasion, been prevented from speaking on the telephone with Mr. Roe.
Moreover, to show that he enjoyed a healthy relationship with Sarah and that she held no animosity towards him, Defendant presented evidence that, during November 1994, Sarah had given him her school picture with a handwritten note expressing her "deep gratitude" towards him as a neighbor. He also showed that, after Sarah had spoken with her mother about the touching, she was disappointed when Mrs. Roe terminated her contact with Defendant.
Finally, Defendant called Dr. Dawn Lord as a witness. She testified that objective testing revealed no pathology in Sarah and that no physical signs of sexual abuse were ever found. In fact, Defendant has argued that absolutely no evidence was produced to show that any of his actions caused harm to Sarah or her mother. He has concluded, therefore, that the jury must have lost its way.
On the other hand, Plaintiffs have argued that the evidence introduced at trial does support the jury verdict. In her testimony, Sarah described the game of Capture in detail and explained to the jury exactly how Defendant had touched her. She testified that she was very upset and angry about what Defendant had done.
To buttress the Plaintiffs' claims that Defendant's actions were knowing, Mrs. Roe testified that, after she had informed Defendant that he was to have no contact with her or the children, he continued to pursue their friendship. He would deliver their paper, send Christmas cards with money and tape notes to their front door. Defendant did not deny these actions nor did he deny that he wanted to rekindle his relationship with Mrs. Roe and the two girls.
Providing the final link of causation for their case, Plaintiffs introduced the testimony of Susan Calaway, a licensed independent social worker. Ms. Calaway testified that, through her therapy sessions with Sarah, she had determined that Sarah suffered from depression dysthymia and adjustment disorder with depressed mood. Ms. Calaway further testified that Sarah's problems stemmed from Defendant's sexual conduct towards her. Finally, Ms. Calaway confirmed that Sarah's condition had dramatically improved after she revealed the sexual touching by Defendant and began therapy.
While there are several possible interpretations of the evidence submitted in this case, this Court must construe it consistently with the lower court's judgment. Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226. An appellate court must be guided by a presumption of correctness. Pawlus v. Bartrug
(1996), 109 Ohio App.3d 796, 799. After reviewing the entire record and in light of the evidence presented at trial, this Court holds that the jury did not clearly lose its way or create a manifest miscarriage of justice. Plaintiff's first assignment of error is overruled.
In his second and third assignments of error, Defendant has argued that the trial court erred to his prejudice by allowing the hearsay testimony of Mrs. Roe and Ms. Calaway. Both Mrs. Roe and Ms. Calaway testified about statements Sarah made to them in regard to the Defendant's actions toward her. Mrs. Roe testified as to the statements Sarah made the first time she informed Mrs. Roe of Defendant's conduct. Likewise, Ms. Calaway testified regarding statements Sarah made about the times Defendant touched her and relayed certain opinions about Sarah's psychological well being as a result.
Nevertheless, where a declarant is examined on the same matters as contained in the challenged hearsay statements, the admission of such statements is harmless given that the declarant was present in court and afforded an opportunity to confirm or deny the statements being challenged. See State v. Tomlinson
(1986), 33 Ohio App.3d 278, 281-82. In this case, Mrs. Roe testified before Sarah. Any inquiry the Defendant desired to make of Sarah regarding her mother's testimony would have been possible, thereby eliminating any concern about its underlying trustworthiness. Following Sarah on the stand was her older sister, father and finally Ms. Calaway. Therefore, the challenged portion of Ms. Calaway's testimony relating to Sarah's statements during treatment was cumulative. Such error is also harmless. See State v. Allen (May 24, 1996), Darke App. No. 1390, unreported, 1996 Ohio App. LEXIS 2212, at *15. Thus, the admission of Mrs. Roe's version of Sarah's statements was harmless, as was the admission of Ms. Calaway's testimony. Defendant's second and third assignments of error are overruled.
For his fourth assignment of error, Defendant has averred that the trial court abused its discretion by not admitting into evidence two judgment entries by the domestic relations court and an objection to a referee's report filed on behalf of Mrs. Roe in the same court. This Court disagrees.
Defendant has argued that the objection to the referee's report was not hearsay as it constitutes an admission under Evid.R. 801(D)(2)(d). Pursuant to that rule, a statement is an admission by a party opponent if it "is offered against a party and is * * * a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]" Evid.R. 801(D)(2)(d). Defendant has further argued that the two journal entries qualify as exceptions to the hearsay rule under Evid.R. 803(8), which provides:
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.
When confronted with the public records exception, the Sixth District Court of Appeals observed:
 The purpose of subdivision (a) is to admit those records involving the simplest and least controversial application of the doctrine, namely, those containing simple factual assertions regarding the function of the official agency.
 Examples of evidence admissible as proof of the activities of official agencies include: accounting records or [sic] governmental agencies; dockets and journal entries of courts, legislative bodies and administrative tribunals; certificates of title, registry, death and birth; records of licensing agencies; and records of deeds and conveyances. * * * [D]ue to the simple and factual nature of these records, and their focus upon the internal function of the relevant agency, the risk of inaccuracy is greatly diminished, and thus they qualify for admission under subdivision (a).
Pool v. Wade (1996), 115 Ohio App.3d 449, 452, quoting Weissenberger's Ohio Evidence (1996) 409, Section 803.105 (Italics sic) (Emphasis added).
Evid.R. 403(B) gives a trial judge discretion to exclude evidence, even though relevant, when the probative value of such evidence "is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Parma v.Manning (1986), 33 Ohio App.3d 67, 69. Where otherwise probative evidence is cumulative in nature, it may be properly excluded at the discretion of the trial court. Arthur Young Co. v. Kelly
(1993), 88 Ohio App.3d 343, 349.
This Court agrees with Defendant that the objection filed in the domestic relations case constitutes a party-opponent admission under Evid.R. 801(D)(2)(d). Moreover, court journal entries, such as the ones at issue in this case, qualify as an exception to the hearsay rule under Wade, supra. Nevertheless, this Court cannot say that their exclusion was so unreasonable, arbitrary, or unconscionable to constitute an abuse of discretion. SeeBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
The exclusion of these three otherwise probative documents does not constitute an abuse of discretion as the facts they present were fully disclosed and testified to during the trial. Such circumstances do not rise to the level of unreasonableness, arbitrariness, or unconscionability required to give rise to an abuse of discretion. Accordingly, Defendant's fourth assignment of error is overruled.
 B. Plaintiff's Cross Appeal
For their cross appeal, Plaintiffs have argued that the trial court's order granting a new trial on Mr. Roe's loss of filial consortium claim was erroneous as a matter of law, or in the alternative, an abuse of discretion. The trial court vacated the award finding it to be excessive. After reviewing the record, this Court concludes that the trial court, while employing a "civil sufficiency" analysis, erred as a matter of law by applying the wrong standard.[1]
Civ.R. 59(A) sets forth the grounds upon which a new trial may be granted. Civ.R. 59(A)(4) provides in pertinent part:
 (A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
* * *
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]
In Ohio, it has been well established that the assessment of damages is so thoroughly within the province of the jury that a court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice, or unless the amount is so manifestly against the weight of the evidence as to show a misconception by the jury of its duties. Wilburn v. ClevelandElec. Illum. Co. (1991), 74 Ohio App.3d 401, 413, citing Toledo,C. O. River Road Co. v. Miller (1923), 108 Ohio St. 388, 389.
In the instant case, the trial court made no such finding as to the amount of compensatory damages awarded to Mr. Roe. Instead, it held that the $15,000 jury award was excessive because the record was void of any evidence supporting Mr. Roe's claim for damages. In essence, the trial court held that there was insufficient evidence to support the award and that any amount would have been excessive. Nevertheless, without an affirmative finding that the jury fell victim to passion and prejudice, or that the jury misunderstood its duties, the trial court's attempt to find manifest excessiveness through the application of a "civil sufficiency" standard constitutes error. See Wilburn,74 Ohio App. 3d at 413.
Moreover, assuming the trial court had applied the appropriate standard, the result would remain unchanged. In keeping with the maxim that the weighing of the evidence and credibility of witnesses is primarily the function of the trier of fact, this Court concludes that the evidence offered at trial supported the jury's award as to Mr. Roe's loss of filial consortium claim as well.
It appears that the jury awarded the $15,000 to compensate for a loss of visitation between Mr. Roe and his two daughters. Defendant has asserted first, that the record is entirely void of any evidence that Mr. Roe was deprived of companionship, visitation, services, comfort, love or solace as a result of Defendant's actions. This proposition may be dismissed out of hand due to the testimony of Sarah alone. Nevertheless, this Court notes that Sarah, her older sister, Mrs. Roe and Mr. Roe each testified that the relationship between Mr. Roe and his daughters had been detrimentally impacted as a result of Sarah's depression. They did not see or visit with one another for almost a year. The jury could have concluded that this resulted in a loss of companionship, visitation, services, comfort, love or solace.
In the alternative, Defendant has argued that the evidence shows that the damages suffered in this case were due to the divorce and Mrs. Roe's actions during 1993 and 1994. Defendant has claimed that this evidence demonstrates the trial court did not abuse its discretion in finding the award excessive and unsupported by the evidence. This Court disagrees.
Sarah, her older sister, Mrs. Roe and Mr. Roe each testified that the relationship between Mr. Roe and his daughters had been detrimentally impacted due to Sarah's depression. After reviewing the evidence, this Court holds that the jury could have reasonably concluded that Sarah's depression was due to Defendant's actions. Accordingly, the verdict was not against the manifest weight of the evidence or a result of passion and prejudice. Absent such circumstances, this Court will not second guess the jury in matters reserved to their assessment. See Goldfarb v. The RobbReport, Inc. (1995), 101 Ohio App.3d 134, 143. The trial court incorrectly granted a new trial on Mr. Roe's claim. Plaintiffs' cross appeal is well taken, and the jury verdict is hereby reinstated.
 III.
Defendant's assignments of error are overruled. Plaintiffs' assignment of error on cross appeal is sustained. The judgment of the trial court is affirmed as to its denial of Defendant's motion for a new trial on Sarah and Mrs. Roe's claims; however, it is reversed as to the granting of a new trial for Mr. Roe's loss of filial consortium claim. To that extent, the jury verdict is, thus reinstated.
Judgment affirmed in part and reversed in part.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to each party equally.
Exceptions.
BETH WHITMORE
FOR THE COURT BAIRD, P.J.
BATCHELDER, J.
CONCUR
[1] A trial court does not have the discretion to apply the wrong standard. See, e.g., Diversified Benefit Plans Agency, Inc.v. Duryee (1995), 101 Ohio App.3d 495, 499.