OPINION
Appellant, Raymond Gau, appeals from the June 1, 2000 judgment entry of a visiting judge in the Lake County Court of Common Pleas denying his petition for postconviction relief.
On the evening of February 26, 1988, Krista Parisi ("the victim") went to the Honky Tonk Saloon in Grand River, Ohio, with her friends Dana DeBernardi and Colleen Vidmar ("Colleen"). They met Colleen's mother, Kathleen Vidmar ("Kathleen"), at the Honky Tonk.
At approximately 1:00 a.m., on the morning of February 27, 1988, the victim accepted a ride home from appellant. The victim testified at trial to the following sequence of events: she and appellant were joined in appellant's car by two of his friends, Bobby Gladding ("Gladding") and John Horn ("Horn"). They drove to the Argonne Arms Apartments. After Gladding and Horn exited the car, a heavyset boy approached the passenger side of the car. The victim attempted to get out of the car, but the boy hit her with a beer bottle and pushed her back into the car. The victim, appellant, and the heavyset boy drove to a church parking lot, where appellant allegedly raped the victim. Appellant left the victim in the parking lot, and she ran home.
Appellant was indicted on November 29, 1988, on one count of rape, in violation of R.C. 2907.02, and one count of kidnapping, in violation of R.C. 2905.01. On November 17, 1989, a jury found appellant guilty on both counts. The trial court sentenced him to serve an indefinite term of incarceration of ten to twenty-five years on the charge of rape, and an indefinite term of incarceration of five to twenty-five years on the charge of kidnapping, with the sentences to be served consecutively. Appellant's conviction was subsequently confirmed by this court in Statev. Gau (Mar. 29, 1991), 11th Dist. No. 89-L-14-172, 1991 WL 45674. Appellant sought leave to appeal his conviction to the Supreme Court of Ohio. The Court overruled appellant's motion on October 7, 1991. Statev. Gau (1991), 62 Ohio St.3d 1405.
On August 8, 1996, appellant filed a petition for postconviction relief. In a July 7, 1997 judgment entry, the trial court determined that appellant failed to demonstrate sufficient facts to establish his claim for relief and, therefore, was not entitled to an evidential hearing on his petition. Appellant appealed that decision to this court, submitting six assignments of error. In his second assignment of error, appellant argued that the prosecution had failed to disclose relevant favorable evidence, specifically, statements made by Colleen and William Hood ("Hood"). In his fourth assignment of error, appellant argued that he received ineffective assistance of counsel because his trial counsel failed to discover the fact that the victim had been hospitalized as the result of an automobile accident on February 1, 1988. Appellant argued that the medical records from this accident were relevant to show that bruises visible on the victim's face and legs after her alleged rape by appellant on February 27, 1988, resulted from that accident and not from an assault on the part of appellant.
In State v. Gau (Dec. 11, 1998), 11th Dist. No. 97-L-197, 1999 WL 289140, at 11 ("Gau II"), we held that appellant's second and fourth assignments of error had "some merit", and that he had "presented sufficient evidence outside of the trial court record to warrant further review of some of the arguments made within [those] two assignments of error."[1] We reversed the trial court and remanded the matter for a hearing with instructions.[2]
The trial court held the evidential hearing mandated by our ruling inGau II on December 17, 1999, and denied appellant's petition in its June 1, 2000 judgment entry. Appellant has filed a timely appeal from that judgment entry and makes the following assignments of error:
 "[1.] The [t]rial [c]ourt erred by failing to grant [a]ppellant's post conviction relief petition due to a violation of [a]ppellant's right to a fair trial and right to [d]ue [p]rocess as provided for in the Fourteenth Amendment to the United States Constitution wherein the [p]rosecutor failed to provide exculpatory or impeachment evidence that the cumulative effect of which created a reasonable probability of a different result occurring.
 "[2.] The [t]rial [c]ourt erred by failing to allow [appellant] to properly introduce relevant evidence and properly cross examine witnesses in regards to the issues specifically remanded to the trial court by this [c]ourt effectively denying [appellant] an evidentiary hearing on his post conviction relief petition at trial.
 "[3.] The [t]rial [c]ourt erred by failing to find that [a]ppellant received ineffective assistance of counsel in violation of his right to counsel under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as due process protection under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution for the reason that trial counsel failed to adequately investigate and call relevant witnesses.
 "[4.] The [t]rial court erred in not providing findings of fact and conclusion[s] of law pursuant to R.C. 2953.21(C)."
The resolution of appellant's fourth assignment of error is determinative of whether we can properly address appellant's first and third assignments at this time. If appellant is correct in his fourth assignment of error that the trial court failed to make the mandated findings of fact and conclusions of law, it would be premature for this court to address the legal issues raised in appellant's first and third assignments of error since the resolution of those issues would depend upon our review of the trial court's findings of fact and conclusions of law. However, appellant's second assignment of error raises issues in connection with the conduct of the evidential hearing that can be addressed independently of the trial court's findings of fact and conclusions of law. Therefore, we will first consider appellant's second and fourth assignments of error.
In his second assignment of error, appellant contends that the trial court improperly denied him the opportunity to complete his direct examinations of Colleen and the victim during the second post-conviction hearing. He further asserts that the trial court denied him the opportunity to make an offer of proof as to how Colleen would have testified and that the trial court refused to admit into evidence the victim's statement to Lieutenant Chamar ("Chamar") of the Grand River Police Department.
The admission or exclusion of relevant evidence is within the discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59,68. An appellate court will not reverse a trial court's ruling on the admissibility of evidence in the absence of an abuse of discretion and material prejudice to the defendant. State v. Pollard (Apr. 13, 2001), 11th Dist. No. 99-A-0072, 2001 WL 369684, at 2, citing State v.Finnerty (1989), 45 Ohio St.3d 104, 109; State v. Earle (1997),120 Ohio App.3d 457, 469. An abuse of discretion "`implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
Initially, we would note that appellant alleges he was not permitted to make an offer of proof as to how Colleen would have testified with respect to her police statement. We disagree. At the close of the hearing, the court permitted appellant's attorney to make a proffer, and appellant's attorney made the following statement:
 "Anyhow, so far as the two statements of [Colleen] and [Kathleen], the report that [the victim] says or the report that Colleen says [the victim] gave to her shortly after the crime occurred was much different than the report the Court will find in Exhibit A. And I think, if I had been allowed to explore that, those reports would have indicated that she told [the victim] that she had been punched in the face and forced or she told Colleen she had been punched in the face and forced to go to the Argonne Arms, a theory which the State wisely abandoned at trial."
Clearly, the trial court provided appellant's attorney the opportunity to proffer evidence as to how Colleen would have testified.
Appellant also contends that the trial court improperly excluded from evidence the victim's statement to Chamar. Appellant attempted to offer the statement at the close of the postconviction relief hearing on December 17, 1999, as appellant's Exhibit E. Appellant suggests in his appellate brief that the report was relevant because it would expose inconsistencies between the victim's account of the events as provided to Chamar and the account she gave to Colleen. We would note, initially, that appellant did not attempt to use the statement to impeach the victim's credibility at the December 17, 1999 remand proceeding, but offered it as an exhibit of substantive evidence in his case in chief.
A police report is potentially admissible evidence pursuant to Evid.R. 803(8), which provides that public records, reports, and statements are not hearsay if they set forth "(a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant * * *." The observations contained in such a report "must be the firsthand observations of the official making the report or of one with a duty to report to a public official."Pool v. Wade (1996), 115 Ohio App.3d 449, 453; Petti v. Perna (1993),86 Ohio App.3d 508, 514. "All persons furnishing and recording information must be under an official duty to do so. * * * If the supplier of information is not under a duty to do so, an essential link in Evid.R. 803(8)(b) is broken." (Citations omitted.) State v. York
(1996), 115 Ohio App.3d 245, 248. Evid.R. 803(8)(b) does not embrace statements made by private citizens. Cincinnati Ins. Co. v. Volkswagen ofAm., Inc. (1987), 41 Ohio App.3d 239, 242, citing 1 Weissenberger, Ohio Evidence, Section 803.108, Chapter 801, at 95.
In the matter sub judice, appellant wished to admit into evidence the victim's statement to the police. The report prepared by Chamar with respect to the victim's statement was not based on his firsthand observation of the events. Rather, it was based on the victim's report of those events. The victim had no duty to make such a report and was clearly acting as a private citizen. Therefore, an essential link in Evid.R. 803(8)(b) was broken, and Chamar's report was inadmissible.
The fact that this report was offered by appellant does not change our analysis. In criminal cases, Evid.R. 803(8)(b) generally excludes reports of matters observed by police officers, but it makes an exception to that rule if the defendant offers the report in question. However, that exception is not applicable in this case, because the contents of Chamar's report were not based upon the firsthand observations of one with an official duty to make a report. Rather, his report contained the version of events provided by the victim, who had no official duty to make such a report. Therefore, we conclude that the trial court properly excluded the report.
Appellant further argues that the trial court prevented his counsel from conducting his direct examination of Colleen, thereby excluding relevant evidence. At one point during Colleen's direct examination, the trial court told appellant's attorney: "Listen to me. `As well as the evaluation of any inconsistencies that may develop in the victim's report of [the] crime,' the victim's report." Subsequent to the trial court making this statement, the following exchange occurred during the direct examination of Colleen Vidmar (Jack Hawkins conducted the direct examination on behalf of appellant; Karen Kowall appeared on behalf of the state):
 "Q. Did [the victim] tell you that [appellant] had dragged her to the front of her house by her hair
"MS. KOWALL: Judge, I am going to object.
"THE COURT: Sustained.
"Q. — after she was raped?
"* * *
 "Q. Did [the victim] leave with [Horn] and [Gladding] and [appellant]?
"A. I don't remember if she did or didn't.
 "Q. Did she tell you that [appellant] had gone to the Argonne Arms with her?
"Ms. Kowall: Objection, your Honor.
"The Court: Sustained.
 "Q. When they arrived there, that [appellant] asked her to go into the apartment?
"Ms. Kowall: Objection, your Honor.
"The Court: Sustained.
 "Q. Did she tell you that when [appellant] said no when she said no, she didn't want to go in the apartment, that [appellant] hit her in the eye?
"Ms. Kowall: Objection, your Honor.
"The Court: Sustained.
 "Q. Did she tell you that a fat guy got in the car and pushed her into the middle?
"Ms. Kowall: Objection, your Honor.
"The Court: Sustained.
 "Q. Did she tell you that when she tried to leave, he hit her with a beer bottle on the side of the head?
"Ms. Kowall: Objection.
 "The Court: Sustained. Now don't go any further. Limit your questioning to the issues that I've outlined; otherwise, I'll deal with you in accordance with what I feel the sanctions should be. Put another question.
"Mr. Hawkins: Your Honor, I'm at a loss.
 "The Court: No more speeches. If you have a question, put a question; if not, sit down.
 "Mr. Hawkins: I don't think the Court has the discretion to deny me the opportunity to make a record.
 "The Court: The discretion is mine. I'm sitting up here as Judge, not you. Put another question or sit down, one of the two. I'm not going to let you try this thing all over again. That's what you're trying to do, and I'm not going to let you. Read what the Court of Appeals said. That's it; no more."
We would note that in Gau II, at 11, we held that "appellant has presented us with witness statements, outside of the record, that present questions as to the extent of the victim's injuries prior to the alleged incident with appellant as well as exposing possible inconsistencies in the victim's report of the incident." When remanding the case for an evidential hearing, we instructed the trial court, in part, to evaluate any inconsistencies in the victim's report of the crime.
The victim testified at trial that the two male passengers, Gladding and Horn, drove with her and appellant to the Argonne Arms. She further testified that appellant raped her, he left her in a grassy area next to a parking lot in the back of a church and that she ran home. She also testified that the first person she told about the rape was her mother approximately three weeks after the alleged incident. All of this testimony potentially conflicts with the information contained in Colleen's police statement.
When we remanded this matter to the trial court in Gau II, we did so because the police statements withheld by the prosecution exposed possible inconsistencies in the victim's report of the incident. Therefore, the questions that appellant's attorney asked on direct examination concerning who was in appellant's car when he and the victim left the Honky Tonk, where appellant left the victim after the alleged rape, and who the victim told about the alleged rape were all relevant to the inquiry conducted by the trial court as mandated by our opinion inGau II.
However, the trial court apparently construed our opinion in Gau II to be much narrower in its scope and placed undue emphasis on the language concerning the victim's report of the crime. It was not this court's intention on remand to limit the hearing to internal inconsistencies contained within the victim's statement to the police. Rather, we intended for appellant to be given the opportunity to examine the inconsistencies between the information the victim provided to the police and the version of events that she related to her friends. Therefore, appellant's second assignment of error is well taken.[3]
In his fourth assignment of error, appellant asserts that the trial court erred in failing to make findings of fact and conclusions of law. R.C. 2953.21(G) states that "[i]f the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition." When dismissing a second or successive petition for postconviction relief, a trial court is not required to issue findings of fact and conclusions of law. State ex rel. Jennings v. Nurre (1995), 72 Ohio St.3d 596, 598. In this case, because the trial court was reviewing appellant's first postconviction petition, the holding in Nurre was not applicable. Therefore, the court erred in failing to issue findings of fact and conclusions of law, and appellant's fourth assignment of error is well-taken.
In view of the trial court's failure to issue findings of fact and conclusions of law, we cannot address appellant's first and third assignments of error at this time.
The judgment is reversed, and this matter is remanded to the Lake County Common Pleas Court for proceedings consistent with this opinion.
JUDITH A. CHRISTLEY, J., DIANE V. GRENDELL, J., concur.
[1] We held that the remainder of appellant's assignments of error lacked merit either because they were unsupported or were barred under the doctrine of res judicata. Gau II at 11.
[2] We instructed the trial court "to conduct an evidentiary hearing as to the extent of any injuries the victim may have sustained immediately before and after the alleged incident with appellant as well as evaluating any inconsistencies that may develop in the victim's report of the crime." Gau II at 11.
[3] We would note that our review of the hearing transcript suggests that a number of appellee's objections to appellant's attorney's questions in the course of direct examination could have been sustained on grounds other than the trial court's narrow construction of Gau II. If, in future proceedings, appellant wishes to explore inconsistencies in the victim's statement, he should do so in accordance with the rules of evidence.