[Cite as *State v. Calderwood*, 194 Ohio App.3d 438, 2011-Ohio-2913.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95269

## THE STATE OF OHIO,

APPELLEE,

v.

## CALDERWOOD,

APPELLANT.

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Common Pleas Court
Case No. CR-533942

**BEFORE:**   Blackmon, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   June 16, 2011

William D. Mason, Cuyahoga County Prosecuting Attorney, and John P. Colan, Assistant Prosecuting Attorney, for appellee.

John F. Corrigan, for appellant.

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} Appellant, William Calderwood, appeals his burglary conviction and assigns the following three errors:

> I. The trial court erred in denying appellant's motion for acquittal pursuant to Ohio Criminal Rule 29 where there was insufficient evidence that appellant trespassed by force, stealth, or deception, in an occupied structure.
>
> II. Appellant's conviction for burglary was against the manifest weight of the evidence.
>
> III. The trial court erred by allowing a police detective to testify that he spoke with the owner of the property who advised him that appellant did not have permission to be inside the structure.

{¶ 2} Having reviewed the record and relevant law, we affirm Calderwood's conviction. The apposite facts follow.

**Facts**

{¶ 3} The Cuyahoga County Grand Jury indicted Calderwood on one count of burglary and 72 counts of arson arising out of a burglary of a house, which subsequently exploded, damaging several houses on West 83rd Street. The state presented 67 witnesses to testify at trial. The jury acquitted

Calderwood of the arson counts but found him guilty of the burglary count; therefore, we will focus on the evidence surrounding the burglary.

{¶ 4} While investigating the explosion, detectives learned that neighbors had seen Calderwood removing items such as appliances and pipes from the house. Calderwood lived next door to the home and also owned rental property down the street. Neighbors observed Calderwood use a dolly to transport the items to his rental property. Calderwood admitted to the arson investigators that he had taken the property. He also admitted to his cellmate and to his wife during a phone call from jail that he had taken the copper and appliances from the house. Thus, it was undisputed that Calderwood took the items. The disputed issues are whether the house was occupied and whether Calderwood had permission to be inside the house.

{¶ 5} Daniel Garman testified that he had lived in the house for 15 years. In late 2008, the home was in the process of being sold but was not abandoned. In fact, Garman periodically checked on the house, paid to have the lawn cut, and paid the utility bills. The home was eventually sold to EZ Access Funding, which is a real estate holding company located in California. In February 2009, EZ hired Marty Rickelman as a property manager to prepare the home for rental or sale.

{¶ 6} Rickelman assessed the property as needing minor repairs in order to be ready for sale or rental. On one of his visits to the property,

Rickelman was approached by Calderwood. Rickelman explained that he worked for the owner of the home and was preparing the house for sale or rental. Calderwood offered to help clean out the house, but Rickelman told him that it was the contractor's job. Rickelman did not give Calderwood permission to enter the house and did not give him a key. Rickelman ceased working for EZ in May 2009.

{¶ 7} In June 2009, EZ hired Rajsunhip Sandhu as Rickelman's replacement. When Sandhu visited the property in the fall of 2009, the side door was open and the lights were on. He took photos of the home and then rekeyed and locked the side door. At that time, the appliances were still there.

{¶ 8} When he returned to the property on January 12, 2010, there was a sign in the window saying "No copper. Stolen by Travis Hopp." Also, the door that he had previously rekeyed appeared to have been kicked open and was braced with a two by four so that it could not be reopened with his key. Sandhu was about to leave when Calderwood approached him. Calderwood produced a key that opened the front door. He told Sandhu that the prior property manager, Rickelman, had given him the key. Calderwood admitted that he put the sign in the front window and that he had called the police regarding the stolen copper. Sandhu's inspection of the property indicated that all the appliances and copper pipes were missing. Sandhu noted that the

copper pipes were removed with precision and not simply yanked out, indicating that the vandal took his time.

{¶ 9} At a Weed and Seed[1] meeting conducted after the explosion, Calderwood admitted taking the appliances and copper but stated that he had the owner's permission and that he had capped the pipes. He also told the leader of the program, Brian Kazy, and Lieutenant Stevens from the Cleveland Arson Investigation Unit that he had obtained the key by breaking into the lock box on the door. The jury found Calderwood guilty of burglary; the trial court sentenced him to three years in prison.

### Insufficient Evidence

{¶ 10} In his first assigned error, Calderwood argues that there was insufficient evidence to support his conviction for burglary.

{¶ 11} Crim.R. 29 mandates that the trial court issue a judgment of acquittal when the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency-of-evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

---

[1]The Weed and Seed program is a federal initiative funded by the Department of Justice and supervised by the United States Attorney's Office that seeks to weed out crime in neighborhoods and provides preventative and intervention services to improve the neighborhoods.

{¶ 12} In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime [proven] beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965.

{¶ 13} A conviction for burglary pursuant to R.C. 2911.12(A)(3) requires the state to prove that Calderwood, by force, stealth, or deception, and with the intent to commit any criminal offense, entered an occupied structure with the purpose to commit in the structure a criminal offense. Calderwood contends that the evidence failed to show that the house was an occupied structure, because no one had lived in it for two years.

{¶ 14} R.C. 2909.01(C) defines an "occupied structure" as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies: (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present."

{¶ 15} While Calderwood contends that the house was not occupied because no one lived there, the relevant inquiry in determining whether a

structure is occupied concerns the residential purpose of the dwelling, rather than the presence or absence of an occupant. *State v. Green* (1984), 18 Ohio App.3d 69, 480 N.E.2d 1128 (home left vacant after the owners moved to another residence was still an occupied structure because it was being maintained as a dwelling); *State v. Williams*, Cuyahoga App. No. 92668, 2009-Ohio-6826 (fact that no one lived in the house for four months is irrelevant in determining whether it was an occupied structure); *State v. Charley*, Cuyahoga App. No. 82994, 2004-Ohio-3463 (structure is still occupied despite the fact that the owner was in a nursing home and the daughter was having the house restored); *State v. Sharp*, Cuyahoga App. No. 86827, 2006-Ohio-3158 (structure's status as an occupied structure depends on the residential purpose of the dwelling rather than the presence or absence of an occupant); *State v. Tornstrom* (Nov. 19, 1998), Cuyahoga App. No. 72898 (a home uninhabitable while undergoing major renovations was found to be an occupied structure).

{¶ 16} Here, although no one had been living in the house, the house was not abandoned. The evidence showed that the house maintained its residential purpose even though it was vacant. The owners of the property had hired property managers to supervise the property until renovations were completed and the house was sold or rented. In fact, until the burglary, the house was fully equipped with appliances and a furnace. Given these facts,

we conclude that the house was an "occupied structure" within the meaning of R.C. 2909.01(C)(1). Accordingly, Calderwood's first assigned error is overruled.

## Manifest Weight of the Evidence

{¶ 17} In his second assigned error, Calderwood argues that his burglary conviction was against the manifest weight of the evidence. He argues that the evidence showed he had permission to be on the premises because he had a key to the house and helped take care of the property by turning the lights on to make the house look occupied.

{¶ 18} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest-weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* [1997], 78 Ohio St.3d 380, * * * 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the

conflicting testimony." Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 19} Calderwood contends that the evidence did not support the state's contention that he obtained the key by breaking into the lock box on the door. Both of EZ's property managers testified that Calderwood was not given permission to go into the homes and that they did not provide Calderwood with a key to the home. Moreover, the Weed and Seed program director, Brian Kazy, and Lieutenant Stevens testified that Calderwood had told them that he obtained the key to the house by breaking into the lock box.

{¶ 20} Calderwood argues that it would have been impossible for him to have a key from the lock box because Sandhu testified that he had removed the lock box and rekeyed the door. However, the door that Sandhu rekeyed was the side door, not the front door. Calderwood had a key to the front door. While Sandhu testified that Calderwood told him that the prior property manager, Rickelman, gave him the key, Rickelman stated that he did not give Calderwood a key nor did he give him permission to be inside the house. Given this evidence, we conclude that the jury did not lose its way and create a manifest miscarriage of justice by finding that Calderwood did not have permission to be inside the home. Accordingly, Calderwood's second assigned error is overruled.

**Hearsay Evidence**

**{¶ 21}** In his third assigned error, Calderwood argues that the trial court erred by allowing Detective Good to testify that the president of EZ told him that Calderwood did not have permission to be inside the structure.

**{¶ 22}** In addition to the evidence that EZ's president told the detective that Calderwood did not have permission to be inside the house, both Rickelman and Sandhu, who were agents of EZ, testified that Calderwood did not have permission to enter the house and that they did not provide him with a key. Given this additional evidenc,e any error the court may have made in admitting the statement of EZ's president is harmless under Crim.R. 52(A), because the evidence was cumulative. Accordingly, Calderwood's third assigned error is overruled.

Judgment affirmed.

JONES and CONWAY COONEY, JJ., concur.